ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAITH SALMA,<br><br>Defendant. | CASE NO. CR 11-00801 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant LAITH SALMA to (1) serve six months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $6,193 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 50 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

# BACKGROUND

Defendant Laith Salma is charged with participating in the conspiracy in San Mateo County from February 2010 through July 2010. Dkt. 1; Presentence Report ("PSR") ¶ 15. Salma first learned about bid rigging in connection with the auction for 611 Fairway Circle in Hillsborough, California. *Id.* Kevin Cullinane demanded $150,000 in exchange for not bidding. Salma's associates subsequently made the payoff to Cullinane. *Id.*

After the purchase of 611 Fairway Circle, Salma purchased properties at the foreclosure auctions through Triterra Investment Portfolio II, LLC ("Triterra"), a company he formed with his associates, including co-conspirator Troy Kent. *Id.* ¶ 16. Salma also participated in payoff agreements. *Id.* Salma indicated that a group of bidders he called the "Big 5" (Joe Giraudo, Kevin Cullinane, Mo Rezaian, Ray Grinsell, and Daniel Rosenbledt) told Salma that if he did not participate in the collusive agreements, they would bid up properties that Salma bid on to a point of unprofitability. *Id.* Giraudo and Rezaian explained the "rules" of the conspiracy to Salma, and Salma described Giraudo as the "King" of the group. *Id.* Salma understood his participation in these payoff agreements was illegal, but participated nonetheless. *Id.* Salma sought to avoid creating a documentary trail of payoff records. In the records of his company, Triterra, payoffs are referred to as "backsheesh," which is Arabic for payoff, or "consulting fees." *Id.*

Salma has acknowledged his participation in sixteen payoff agreements, totaling a volume of commerce of more than $3.4 million dollars. *Id.* ¶ 17. Salma's company, Triterra, received more than $43,000 in payoff money to refrain from bidding on six properties at the San Mateo auctions, of which Salma personally received $6,193. *Id.* ¶¶ 17, 20. Because Salma was not the purchaser of these six properties, they did not contribute to his total volume of commerce. *Id.*

On October 27, 2011, Salma was charged by information with one count of bid rigging and one count of conspiracy to commit mail fraud. Dkt. 1. On December 14, 2011, Salma pleaded guilty and began cooperating with the government's investigation. Dkt. 5. On October 11, 2017, Salma withdrew from his plea agreement by stipulation and entered a new plea agreement to bid-rigging charges only. Dkt. 51.

# ARGUMENT

## A. Sentencing Guidelines Calculations

### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Salma's Criminal History Category is determined by the Court. The Presentence Report ("PSR") calculates Salma's Criminal History Category as I, based on minimal prior criminal history. PSR ¶¶ 35-41.

### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. *Id.* ¶ 34; Dkt. 51, ¶ 9. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 25-34; U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $34,709 to $173,545, consistent with the plea agreement. PSR ¶ 78; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $4,000 and $40,000. Dkt. 51. This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement. In conjunction with its custodial recommendation, the government recommends a $4,000 fine.

The government recommends restitution in the amount of $6,193, consistent with the plea agreement. Dkt. 11.

## B. Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 50

1  percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence
2  of 6 months.
3  　　　　The timing, significance, nature and extent of Salma's cooperation warrant a 50 percent
4  reduction.  Salma entered his plea agreement pre-indictment on December 14, 2011, and
5  immediately began cooperating in the investigation.  His plea may have influenced the decisions
6  of defendants who pleaded after him to also plead guilty and accept responsibility.  For example,
7  the government believes that his plea was likely a significant contributing factor in the
8  subsequent decision of Salma's business partner, co-conspirator Troy Kent, to plead guilty.
9  　　　　Additionally, Salma provided six candid interviews with the FBI in which he produced
10 and explained his notes regarding certain bid-rigging agreements.  During his interviews, Salma
11 provided information that was particularly helpful regarding the operation of the conspiracy, the
12 conduct of other conspirators, and various bid-rigging agreements.  Salma also made himself
13 readily available to the prosecution team in the event he would be needed for further information
14 or potential testimony.
15 　　　　For these reasons, a 50 percent downward departure for substantial assistance to the
16 investigation and prosecution of these cases is appropriate.
17 **C.     Sentencing Recommendation**
18 　　　　The government's recommendation of six months is reasonable and not greater than
19 necessary in light of the factors articulated in 18 U.S.C. § 3553.  The Court's sentence must
20 reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence
21 to future bid-rigging offenses and white-collar crime generally.
22 　　　　Given the magnitude of the financial harm caused by Salma's conduct, the government's
23 recommendation, which includes a custodial term, is appropriate and consistent with the
24 commentary in the applicable Guidelines.  The commentary to the Guidelines makes clear that
25 "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as
26 community confinement [should] not be used to avoid imprisonment of antitrust offenders."
27 U.S.S.G. §2R1.1, cmt. n. 5 & Background.  Given Salma's substantial assets, a fine alone—in
28 the absence of a custodial term—would not serve as an adequate deterrent.  The foreclosure

U.S.' SENT'G MEMO                                          4
*United States v. Salma*, CR 11-00801 CRB

auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.  Salma did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his very early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his minimal prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 50 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Laith Salma to (1) serve six months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $6,193 in restitution.

Dated:  April 19, 2018                                  Respectfully submitted,

/s/
MICHAEL RABKIN
Trial Attorney
United States Department of Justice
Antitrust Division